# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN R. KRUEGER, Derivatively on behalf of Nominal Defendant PERRIGO COMPANY PLC, | C.A. NO. 2:19-CV-18652-MCA-LDW |
| Plaintiff, | ECF Case |
| v. | Document Electronically Filed |
| BRADLEY A. ALFORD, *et al.*, | **Motion Day**: May 18, 2020 |
| Defendants, | |
| PERRIGO COMPANY PLC, | |
| Nominal Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION TO DISMISS THE COMPLAINT OR STAY THE PROCEEDINGS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ............................................................................................1

ARGUMENT .................................................................................................5

    I.      PLAINTIFF LACKS STANDING TO PURSUE THESE DERIVATIVE CLAIMS UNDER THE GOVERNING IRISH LAW ...........................................5

          A.    Irish Law Applies to This Action..................................................6

          B.    Plaintiff Lacks Standing to Bring a Derivative Suit on Behalf of Perrigo...........................................................................................7

               1.    Plaintiff Does Not Have Standing Because He is Not a Member ....................................................................................9

               2.    Plaintiff Does Not Have Standing Because He Did Not Obtain Pre-Suit Authorization from the Irish High Court ............10

    II.     ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS* ...........................................................................................11

          A.    Plaintiff's Choice of Forum is Entitled to Little Deference......................11

          B.    Ireland Is an Available and Adequate Alternative Forum .........................13

          C.    The Private Interest Factors Weigh in Favor of Dismissal ........................15

          D.    The Public Interest Factors Weigh in Favor of Dismissal .........................17

    III.    THE TAX-RELATED CLAIMS FAIL FOR ADDITIONAL REASONS .................................................................................................20

    IV.    IF THIS ACTION SOMEHOW SURVIVES, IT SHOULD BE STAYED PENDING RESOLUTION OF THE PRIOR LITIGATIONS ..............................22

CONCLUSION..............................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dredging Co. v. Miller*,
   510 U.S. 443 (1994)................................................................20

*Archut v. Ross Univ. Sch. of Veterinary Med.*,
   2013 WL 5913675 (D.N.J. Oct. 31, 2013)..............................14, 17, 18

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007)..............................................7

*Batchelder v. Nobuhiko Kawamoto*,
   147 F.3d 915 (9th Cir. 1998) ..........................................7, 9

*Bel-Ray Co. v. Chemrite Ltd.*,
   181 F.3d 435 (3d Cir. 1999)..............................................8

*Bravetti v. Liu*,
   2015 WL 1954466 (D.N.J. Apr. 29, 2015) .................................6

*Breault v. Folino*,
   2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)...........................23

*Brenner v. Albrecht*,
   2012 WL 252286 (Del. Ch. Jan. 27, 2012)................23, 24, 25, 26, 27

*Brotherton v. Celotex Corp.*,
   493 A.2d 1337 (N.J. Super. Ct. Law Div. 1985) ..........................6

*Brudno v. Wise*,
   2003 WL 1874750 (Del. Ch. Apr. 1, 2003) ...........................25, 27

*Brunk v. Eighth Judicial Dist. Court*,
   2019 WL 5110141 (Nev. Oct. 11, 2019) ................................10

*City of New Orleans Emps. Ret. Sys. v. Hayward*,
   508 F. App'x 293 (5th Cir. 2013) ......................................12

*Coleman v. Taub*,
   638 F.2d 628 (3d Cir. 1980)..............................................7

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987).......................................................5

*Cucci v. Edwards,*
    2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ................................................................23, 28

*Davis v. Wells Fargo,*
    824 F.3d 333 (3d Cir. 2016) ................................................................................................8

*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) ............................................................................................................6

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA,*
    623 F.3d 147 (3d Cir. 2010) ............................................................................................17

*Fagin v. Gilmartin,*
    432 F.3d 276 (3d Cir. 2005) ................................................................................................6

*Flynn v. Nat'l Asset Mgmt. Agency/Nat'l Asset Mgmt. Ltd.,*
    303 F.R.D. 448 (S.D.N.Y. 2014) ......................................................................................13

*Gilstrap v. Radianz Ltd.,*
    443 F. Supp. 2d 474 (S.D.N.Y. 2006) ..............................................................................19

*Graphic Scanning Corp. v. Yampol,*
    677 F. Supp. 256 (D. Del. 1988) ......................................................................................26

*Hausman v. Buckley,*
    299 F.2d 696 (2d Cir. 1962) ................................................................................................7

*Heine v. Bergen Cnty. Exec.,*
    2015 WL 7720170 (D.N.J. Sept. 30, 2015) ........................................................................5

*Holzman v. Guoqiang Xin,*
    2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) ............................................................12, 19

*In re Banco Santander Sec.-Optimal Litig.,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ........................................................................17, 18

*In re BP S'holder Derivative Litig.,*
    2011 WL 4345209 (S.D. Tex. Sept. 15, 2011) ..............................................12, 15, 19, 20

*In re Duke Energy Corp. Coal Ash Derivative Litig.,*
    2015 WL 5135066 (Del. Ch. Aug. 31, 2015) ..................................................................26

*In re First Solar Derivative Litig.,*
    2012 WL 6570914 (D. Ariz. Dec. 17, 2012) ....................................................................23

*In re Groupon Derivative Litig.,*
    882 F. Supp. 2d 1043 (N.D. Ill. 2012) ..............................................................................27

*In re Insys Therapeutics Inc. Derivative Litig.*,
2017 WL 5953515 (Del. Ch. Nov. 30, 2017) ...................................................23, 25

*In re Isolagen Inc., Sec. & Derivative Litig.*,
2007 WL 1101278 (E.D. Pa. Apr. 10, 2007) ...........................................................25

*In re Ormat Techs., Inc. Derivative Litig.*,
2011 WL 3841089 (D. Nev. Aug. 29, 2011) ...........................................................26

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012).......................................................................................8

*In re STEC, Inc. Derivative Litig.*,
2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ...........................................22, 27, 28

*Inversiones Mar Octava Limitada v. Banco Santander S.A.*,
439 F. App'x 840 (11th Cir. 2011) .........................................................................13

*Kamen v. Kemper Fin. Servs.*,
500 U.S. 90 (1991)...................................................................................................21

*Kisano Trade & Invest Ltd. v. Lemster*,
737 F.3d 869 (3d Cir. 2013).....................................................................................11

*Koger, Inc. v. O'Donnell*,
2007 WL 3232586 (D.N.J. Oct. 31 2007)...........................................................13, 17

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)................................................................................................12

*Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*,
860 F. Supp. 1055 (D.N.J. 1994) ...........................................................................15

*Landis v. North Am. Co.*,
299 U.S. 248 (1936)...........................................................................................22, 27

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008).......................................................................................7

*Lloyd v. Carney*,
2011 WL 11799981 (D.N.J. Aug. 5, 2011) ..........................................................22, 27

*Locals 302 & 612 of the Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus.
Ret. Trust v. Blanchard*,
2005 WL 2063852 (S.D.N.Y. Aug. 25, 2005) ....................................................7, 10

*Microsoft Corp. v. Vadem, Ltd.*,
2012 WL 1564155 (Del. Ch. Apr. 27, 2012) ..........................................................10

*Miller v. Boston Sci. Corp.*,
   380 F. Supp. 2d 443 (D.N.J. 2005) ...................................................................18

*Nat'l Grp. for Communs. & Computs. Ltd. v. Lucent Techs. Int'l Inc.*,
   331 F. Supp. 2d 290 (D.N.J. 2004) .....................................................................8

*Ono v. Itoyama*,
   884 F. Supp. 892 (D.N.J. 1995) ..........................................................................7

*Path to Riches, LLC v. CardioLync, Inc.*,
   290 F. Supp. 3d 280 (D. Del. 2018) ..................................................................18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ...............................................................11, 14, 15, 18, 19

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
   2012 WL 2995199 (D.N.J. July 23, 2012) ...............................................16, 17, 20

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................8

*Rohm & Haas Co. v. Adco Chem. Co.*,
   689 F.2d 424 (3d Cir. 1982) ................................................................................6

*Roofer's Pension Fund v. Papa, et al.*,
   2018 WL 3601229 (D.N.J. July 27, 2018) ...........................................................3

*Rosenblum v. Sharer*,
   2008 WL 9396534 (C.D. Cal. July 28, 2008) ............................................23, 27

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ..........................................................................................26

*Russo v. New Jersey*,
   2018 WL 3601234 (D.N.J. June 22, 2018) ........................................................22

*Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*,
   34 A.3d 1074 (Del. 2011) ...................................................................................7

*Serbin v. Ziebart Int'l Corp.*,
   11 F.3d 1163 (3d Cir. 1993) ................................................................................8

*Steward Int'l Enhanced Index Fund v. Carr*,
   2010 WL 336276 (D.N.J. Jan. 22, 2010) ................................................. *passim*

*Suhail v. Trans-Americainvest (St. Kitts), Ltd.*,
   2015 WL 4598809 (D.N.J. July 29, 2015) .........................................................20

*Thomson Info. Servs. Inc. v. British Telecomms., PLC.*,
    940 F. Supp. 20 (D. Mass. 1996) ........................................................15

*Tomran, Inc. v. Passano*,
    891 A.2d 336 (Md. 2006) ....................................................................7

*Trikona Advisors Ltd. v. Kai-Lin Chuang*,
    2013 WL 1182960 (E.D.N.Y. Mar. 20, 2013) ....................................27

*Va. M. Damon Tr. v. N. Country Fin. Corp.*,
    325 F. Supp. 2d 817 (W.D. Mich. 2004) ............................................21

*Vaughn v. LJ Int'l., Inc.*,
    174 Cal. App. 4th 213 (Cal. Ct. App. 2009) ......................................10

*Verify Smart Corp. v. Bank of Am., N.A.*,
    2019 WL 1594474 (D.N.J. Apr. 15, 2019) ..........................................6

*Windt v. Qwest Commc'ns Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008)..........................................................11, 12

**Statutes and Court Rules**

Mich. Comp. Laws § 450.1493a (2019) ....................................................21

Securities Exchange Act of 1934 §§ 14(a) and 29(b), 15 U.S.C. §§ 78n and 78cc ........................5

Companies Act [Ireland] 2014, Section 168................................................9

Rules of the Superior Courts of Ireland, Order 15, Rule 39 ......................8, 9

Federal Rule of Civil Procedure 12(b)(1) ..........................................6, 7, 28

Federal Rule of Civil Procedure 12(b)(6) ..........................................6, 8, 28

Federal Rule of Civil Procedure 23.1 ..............................................6, 20, 28

Federal Rule of Civil Procedure 44.1 ........................................................8

## PRELIMINARY STATEMENT[1]

The Complaint should be dismissed in full for two independent reasons.

*First*, Plaintiff lacks standing to sue derivatively on behalf of nominal defendant Perrigo Company plc ("Perrigo" or the "Company"). Perrigo is incorporated under the laws of Ireland, and well-established choice of law principles require the application of Irish law to this action. As the Irish statutory scheme controlling derivative suits makes clear, a shareholder of a company organized under Irish law cannot pursue a derivative claim unless the shareholder is a "member" of the company *and* the shareholder has obtained judicial permission from the Irish High Court. Plaintiff's failure to comply with both requirements mandates dismissal of this action.

*Second*, Ireland is a more suitable forum for this derivative action. Many of the events underlying the claims at issue occurred in Ireland, and this action requires application of Irish law. This Court should thus dismiss the action under the doctrine of *forum non conveniens*.

If the Court declines to dismiss Plaintiff's Complaint in full, it should dismiss the portions of the Complaint about which Plaintiff made no demand and stay the remaining claims pending final resolution of the securities and antitrust actions from which this tag-along action copies its underlying allegations.

## BACKGROUND

Plaintiff alleges he is a shareholder and seeks to bring this action derivatively on Perrigo's

---

[1] Emphasis is added and internal citations are omitted throughout. Citations to ¶ are to the corresponding paragraphs in the complaint in this action (the "Complaint"). Any citations to the Complaint in this Motion are not a concession as to the accuracy or correctness of the factual or legal allegations in the Complaint.

behalf against eight current and fourteen former Perrigo Board members[2] or executives. ¶¶ 43, 47-70.

Perrigo is the world's largest manufacturer of over-the-counter healthcare products and supplier of infant formulas for the store brand market. Perrigo is incorporated and headquartered in Ireland (as Plaintiff concedes, ¶ 44) and, through subsidiaries, has U.S. operations in Michigan, ¶ 39. Defendants Bradley Alford, Rolf Classon, Adriana Karaboutis, Murray Kessler (also CEO), Jeffrey Kindler, Donal O'Connor, Geoffrey Parker, and Theodore Samuels are current Board members (though the entire current Board has not been sued). ¶¶ 47-53, 63. Defendant Joseph Papa served as the CEO and Chairman of the Board from 2006 to April 2016. ¶ 65.  Defendant Douglas Boothe served as a senior executive. ¶ 68.

*Antitrust MDL Action*.  Like many other drug companies, Perrigo has been involved with a Department of Justice Antitrust Division investigation relating to drug pricing in the generic prescription pharmaceutical industry. ¶ 24. No civil or criminal claims have been brought by any governmental agency against Perrigo or any of its employees in connection with any antitrust investigation. Beginning in 2016, private plaintiffs have filed more than a dozen complaints alleging that dozens of pharmaceutical companies, including Perrigo, participated in a conspiracy or conspiracies with certain other generic pharmaceutical manufacturers concerning the pricing, marketing, and sale of certain generic prescription pharmaceuticals.  Those actions are proceeding as part of a consolidated multi-district litigation ("MDL") captioned *In re: Generic Pharmaceutical Pricing Antitrust Litigation*, 2:16-MD-2724 (E.D. Pa. transferred Aug. 5, 2016) (the "Antitrust MDL Action"). Discovery is ongoing in the Antitrust MDL Action.

---

[2] Although the individual defendants served on Perrigo's Board of Directors (the "Board") and/or were directors or officers at Perrigo at different times, Plaintiff does not differentiate among the individual defendants' tenures as Board members or executives.

***DNJ Class Action.*** On June 21, 2017, a group of investors (the "DNJ Plaintiff") filed an amended complaint (the "DNJ Complaint") in a securities class action captioned *Roofer's Pension Fund v. Papa, et al.*, No. 2:16-cv-02805 (D.N.J.) (the "DNJ Class Action"), ECF 89. The DNJ Complaint alleged that Perrigo and certain of its officers and directors made material misstatements about "four key areas": (i) Perrigo's integration of Omega Pharma N.V. ("Omega"), a Belgium-based pharmaceutical company acquired by Perrigo in March 2015; (ii) Perrigo's accounting treatment of the royalty stream from a drug called Tysabri®; (iii) Perrigo's organic growth; and (iv) allegedly "collusive" pricing in connection with Perrigo's generic prescription drugs division. On July 27, 2018, this Court granted in part and denied in part the defendants' motion to dismiss the DNJ Complaint. The Court dismissed allegations relating to the Tysabri® royalty stream and Perrigo's organic growth, and dismissed all claims against certain members of the Board. *Roofer's Pension Fund v. Papa, et al.,* 2018 WL 3601229, at *20, *22, *14 n.8, *16 n.12 (D.N.J. July 27, 2018) (the "DNJ MTD Decision"). The surviving claims relate to alleged problems with Perrigo's integration of Omega and supposedly "collusive" pricing in Perrigo's generic prescription drug division.  Discovery is ongoing in the DNJ Class Action.[3]

***Shareholder Litigation Demand.*** On October 30, 2018, Plaintiff's counsel demanded that the Board "take suitable action to redress damages to Perrigo and its subsidiaries caused by breaches of fiduciary duties by each officer and director implicated in the wrongdoing." Compl., Ex. A at 1 (the "Demand"). Plaintiff insisted that these "legal claims be brought in Michigan" under Michigan law. *Id.* at 7. The Demand quoted heavily from the DNJ MTD Decision partially denying defendants' motion to dismiss in the DNJ Class Action and identified the same four

---

[3] In addition to the DNJ Class Action, shareholders have brought fifteen opt-out actions making similar allegations. *E.g.*, ¶¶ 100, 206. Discovery is ongoing in those actions as well.

categories of alleged misstatements: (a) Omega integration; (b) Tysabri® royalty stream; (c) organic growth; and (d) supposedly "collusive" pricing. *Id.* at 1-2.

***SDNY Class Action.*** On November 8, 2018—after Plaintiff's counsel made his Demand on Perrigo's Board, but nearly a year before Plaintiff filed the Complaint—Perrigo disclosed that Ireland's Office of Revenue Commissioners ("Irish Revenue"), the Irish tax collection agency, sent Perrigo an "audit findings letter" related to "Elan's taxation of the 2013 sale of Tysabri intellectual property and other assets related to Tysabri," to which Perrigo responded by stating its disagreement with Irish Revenue's position. ¶ 320. In late November 2018, Irish Revenue assessed Perrigo $1.9 billion in back taxes. ¶¶ 46, 315, 328. Perrigo has challenged that tax assessment in Irish proceedings, which are currently pending. ¶¶ 26, 315.

On May 31, 2019, a group of investors (the "SDNY Plaintiff") filed a second amended complaint (the "SDNY Complaint") in a putative securities class action captioned *In re Perrigo Company PLC Securities Litigation*, 19-CV-00070-DLC (S.D.N.Y. Jan. 3, 2019) (the "SDNY Class Action," and, together with the Antitrust MDL Action and the DNJ Class Action, the "Prior Litigations").[4] The SDNY Complaint alleges that Perrigo and certain executives made material misstatements or omissions relating to Irish Revenue audits of a Perrigo subsidiary domiciled in Ireland. The defendants' motion to dismiss the SDNY Complaint is pending. *See id.*, ECF 69.

***Response to Demand.*** On January 29, 2019, Perrigo, through its Irish counsel, responded to the Demand, stating that the Demand was "heavily based" on allegations from the DNJ Class Action and the Antitrust MDL Action, where there had "been no finding against any defendants."

---

[4] The Complaint in this derivative action also refers to U.S.-based tax problems disclosed by Perrigo. ¶¶ 26, 315-17, 322, 324, 328, 331. Those matters have not been the subject of shareholder litigation.

Groner Decl. Ex. 1 ("Response") at 1.[5] Perrigo further explained that as an Irish company, only its members could pursue derivative litigation on its behalf, and only after "apply[ing] for and obtain[ing] leave to initiate a derivative action from the High Court of Ireland." *Id.* at 2. Perrigo explained that Plaintiff was not a "member" of the company because he never registered his shares. *Id.* Further, Plaintiff had neither sought nor obtained leave to initiate a derivative action. *Id.*

**Complaint.** Rather than meet his absolute obligation to seek leave from the Irish High Court, on October 2, 2019, Plaintiff filed this infirm Complaint.[6] It purports to assert four counts: two based on common law (breach of duty and unjust enrichment) against all defendants and two based on federal law (Securities Exchange Act of 1934 (the "Exchange Act") §§ 14(a) and 29(b)) against only certain defendants. ¶ 1; Complaint, Part IX.

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING TO PURSUE THESE DERIVATIVE CLAIMS UNDER THE GOVERNING IRISH LAW

The duties of directors and officers, as well as the standards governing a derivative suit, are determined by the law of the jurisdiction in which the company is incorporated. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) ("[A] corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."). Perrigo is incorporated in Ireland, thus Irish law controls. Irish law provides a specific statutory regime for commencement and prosecution of

---

[5] Insofar as the Response is incorporated by reference in the Complaint (¶¶ 28, 339), the Court may consider it in connection with this Motion. *See Heine v. Bergen Cty. Exec.*, 2015 WL 7720170, at *2 n.2 (D.N.J. Sept. 30, 2015).

[6] Although the Response stated that Perrigo trusted that "no application with respect to the Demand will be brought before any court outside of Ireland without this correspondence being brought to the attention of any such court," Response at 3, Plaintiff failed to include the Response as an exhibit to the Complaint.

derivative claims: only a registered member of an Irish company may bring a derivative action on its behalf, and only after petitioning the High Court of Ireland for leave to bring the derivative case. Plaintiff has not registered his Perrigo shares (and thus is not a "member" of Perrigo) nor has he petitioned the High Court.  He therefore lacks standing to assert these claims on Perrigo's behalf. This lawsuit must be dismissed under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 23.1.

### A.      Irish Law Applies to This Action

Plaintiff's standing to bring claims derivatively on behalf of Perrigo is a question of Irish law.[7] "[I]n a case based on federal question jurisdiction where a court is exercising supplemental jurisdiction over state law claims, the federal court applies the choice of law rules of the forum state." *Verify Smart Corp. v. Bank of Am., N.A.*, 2019 WL 1594474, at *4 (D.N.J. Apr. 15, 2019); *see also Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982). Thus, this Court should examine the choice of law rules of New Jersey to determine what substantive law applies to these derivative claims.

Courts in New Jersey follow the internal affairs doctrine, a choice of law canon holding that "the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs.") (citing *Brotherton v. Celotex Corp.*, 493 A.2d 1337, 1339 n.1 (N.J. Super. Ct. Law Div. 1985)); *see also Bravetti v. Liu*, 2015 WL 1954466, at *2 (D.N.J. Apr. 29, 2015) (same). Internal affairs are "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Edgar v. MITE*

---

[7] While Plaintiff asserts four counts, two of which are brought under Exchange Act provisions, neither federal provision creates a federal right for a shareholder to bring an action derivatively on behalf of a corporation. Plaintiff's right to sue derivatively is a question of corporate law (here, Irish law).

*Corp.*, 457 U.S. 624, 645 (1982). A shareholder's standing to sue derivatively on behalf of a corporation is an internal affair for purposes of this doctrine. *See LaSala v. Bordier et Cie*, 519 F.3d 121, 131 n.13 (3d Cir. 2008); *Ono v. Itoyama*, 884 F. Supp. 892, 894 (D.N.J. 1995) (citing *Coleman v. Taub*, 638 F.2d 628, 629, n. 1 (3d Cir. 1980)). As numerous courts have recognized, the internal affairs doctrine applies to corporations incorporated outside the United States. *See, e.g.*, *Tomran, Inc. v. Passano*, 891 A.2d 336, 346 (Md. 2006) (applying the internal affairs doctrine and affirming dismissal of derivative suit based on Irish law); *Hausman v. Buckley*, 299 F.2d 696, 701-03 (2d Cir. 1962) (Venezuelan law); *Locals 302 & 612 of the Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Trust v. Blanchard*, 2005 WL 2063852, at *3-4 (S.D.N.Y. Aug. 25, 2005) (Canadian law); *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1081-82 (Del. 2011) (Spanish law); *Batchelder v. Nobuhiko Kawamoto*, 147 F.3d 915, 920-22 (9th Cir. 1998) (Japanese law).

Plaintiff concedes that Perrigo is incorporated in Ireland. ¶ 44. Applying New Jersey's internal affairs doctrine, it is the law of Ireland—the place of Perrigo's incorporation—that governs whether Plaintiff has standing to sue derivatively on Perrigo's behalf.[8]

### B.  Plaintiff Lacks Standing to Bring a Derivative Suit on Behalf of Perrigo

To bring a derivative action, Plaintiff must have standing.  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The standing inquiry

---

[8] Plaintiff asserts that "[t]his Court should apply Michigan corporate law, rather than Irish corporate law," because Perrigo has "overwhelmingly greater business ties in Michigan" insofar as "the principal wrongdoers lived and worked in Michigan" and "Perrigo's business still primarily occurs in Michigan." ¶¶ 32-33, 35-39. Under New Jersey choice of law rules, a shareholder's right to bring a derivative action is determined by the law of the state of incorporation, not the law of the state where Plaintiff has alleged that the company has "greater business ties." Here, Plaintiff does not and cannot contest that Perrigo is incorporated in Ireland.

focuses on whether the plaintiff is the proper party to bring a lawsuit . . . ." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). When the answer is no, as it must be here, "a court must grant a motion to dismiss" because "it lacks subject-matter jurisdiction to hear [the] claim," *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).[9] Plaintiff may not sue derivatively on behalf of Perrigo because he has failed to comply with the statutory prerequisites of Irish law: Plaintiff is not a member of Perrigo and Plaintiff has not obtained pre-suit authorization from the High Court of Ireland, and therefore Plaintiff lacks standing to sue under Irish law. This action must be dismissed.

Plaintiff cannot sue derivatively on behalf of Perrigo because he has not complied with the fundamental statutory prerequisites for bringing derivative claims under Irish law. Under Irish law, only "members" of a corporation may sue derivatively on its behalf. Macken Aff. ¶¶ 10, 18, 23-25.[10] Before bringing the derivative suit, the *member* must apply for and obtain leave to initiate a derivative action from the High Court of Ireland. Macken Aff. ¶ 18. This substantive rule of Irish law, *which has no exceptions*, is codified in Order 15, Rule 39 of the Rules of the Superior Courts

---

[9] Alternatively, Defendants move for dismissal under Federal Rule of Procedure 12(b)(6). *See Serbin v. Ziebart Int'l Corp.*, 11 F.3d 1163, 1180 (3d Cir. 1993) (affirming dismissal under Rule 12(b)(6) for lack of standing).

[10] Defendants hereby provide notice pursuant to Federal Rule of Civil Procedure 44.1 of their intent to rely upon foreign law in this action. *See Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999) ("A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.") (quoting Fed. R. Civ. P. 44.1); *see also Nat'l Grp. for Communs. & Computs. Ltd. v. Lucent Techs. Int'l Inc.*, 331 F. Supp. 2d 290, 294 (D.N.J. 2004) ("The court may rely upon its own research and any submissions from the parties when considering foreign law….[including,] the aid of expert witnesses."). Copies of cited Irish legal authorities are being provided to the Court through the accompanying Affidavit of retired Justice Fidelma Macken, dated January 8, 2020 ("Macken Aff.").

of Ireland. *Id*. The leave of the High Court of Ireland requirement is not merely a formality. Macken Aff. ¶ 26. Order 15, Rule 39 is duly adopted in accordance with the laws of Ireland and sets forth specific and detailed requirements that *must* be satisfied in order to obtain leave to initiate a derivative action on behalf of an Irish company. *Id*.

        1.    <u>Plaintiff Does Not Have Standing Because He is Not a Member</u>

Plaintiff does not have standing to sue derivatively because he has never registered as a member of Perrigo. Under Irish law, only *members* of a corporation can sue derivatively on the corporation's behalf. Macken Aff. ¶¶ 10-11, 18, 23-25, 40. Section 168 of the Companies Act [Ireland] 2014 defines members of a company as the original subscribers of the company and every other person who subsequently agrees to become a member of the company and who registers as a member. Macken Aff. ¶ 10. Status as a beneficial owner does not automatically qualify a shareholder as a "member." Macken Aff. ¶ 23. Consequently, while all members of an Irish company are shareholders, not all shareholders are members. *Id*. Courts in the United States have enforced similar requirements of foreign law regarding who may bring a derivative action. *See*, *e.g.*, *Batchelder*, 147 F.3d at 921-22 (interpreting applicable Japanese law to deny standing to ADR holders with respect to initiating shareholder derivative actions).

As Perrigo explained in its Response to Plaintiff's Demand, Plaintiff never registered as a Perrigo member. Response at 2; *see also* Macken Aff. ¶¶ 11, 40. Plaintiff does not allege otherwise. For this reason, under Irish law, Plaintiff does not have standing to bring a derivative action on Perrigo's behalf and the Court should dismiss the Complaint for lack of standing.

2.      Plaintiff Does Not Have Standing Because He Did Not Obtain Pre-Suit
        Authorization from the Irish High Court

Even if Plaintiff were a member of Perrigo (he is not), he still would not have standing to

sue derivatively. He failed to obtain the mandatory pre-suit authorization from the Irish High

Court. Macken Aff. ¶¶ 41-42.

Under Irish law, a derivative action is any action in which a member of a company makes

a claim on behalf of the company. Macken Aff. ¶ 21. Such an action "may not be commenced

without the leave of the Court." Macken Aff. ¶ 22. The law specifically defines "Court" as the

High Court of Ireland or a judge thereof. *Id*. Only the High Court of Ireland has the power and

authority to hear and consider applications for leave to bring a derivative action on behalf of an

Irish company. *Id*. Further, in its Originating Notice of Motion before the High Court, the member

*must* include "an opinion of counsel as to whether the applicant has a realistic prospect of success."

Macken Aff. ¶ 28. The opinion of counsel requirement is a vital part of Irish law concerning

derivative actions. Macken Aff. ¶¶ 27-32.

The Complaint has not alleged that Plaintiff applied to the Irish High Court for leave to

bring this action. *See* ¶¶ 336-43. Where, as here, a shareholder has failed to obtain appropriate

judicial leave before initiating a derivative action on behalf of a company incorporated in a

jurisdiction that imposes such a requirement, courts routinely dismiss the action. *See Locals 302

& 612*, 2005 WL 2063852 at *4 (dismissing derivative action because plaintiff had not sought

leave of proper Canadian court); *Vaughn v. LJ Int'l., Inc.*, 174 Cal. App. 4th 213, 217 (Cal. Ct.

App. 2009) (affirming dismissal of derivative action because plaintiff had not obtained approval

to proceed from the high court of the British Virgin Islands); *Microsoft Corp. v. Vadem, Ltd.*, 2012

WL 1564155, at *6 (Del. Ch. Apr. 27, 2012) (dismissing derivative claims because plaintiff did

not obtain leave from high court of the British Virgin Islands); *Brunk v. Eighth Judicial Dist.*

*Court*, 2019 WL 5110141, at *8 (Nev. Oct. 11, 2019) (granting writ of prohibition ordering dismissal of derivative action because plaintiff had not obtained leave of court as required under British Columbian common law). Because Plaintiff has not complied with Irish law, by failing to obtain the Irish High Court's necessary permission to proceed with these derivative claims, he lacks standing to initiate this derivative action. The entire action should be dismissed without leave to amend.

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

The doctrine of *forum non conveniens* provides an independent basis for dismissal of the Complaint. The *forum non conveniens* doctrine recognizes a court's discretion to decline to exercise jurisdiction over a suit if the convenience of the parties and the court, and the interests of justice, point towards adjudication of the case in another forum. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 188-89 (3d Cir. 2008). "[T]he *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Four factors guide the analysis:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013).

### A. Plaintiff's Choice of Forum Is Entitled to Little Deference

The degree of deference afforded to a plaintiff's choice of forum is based on a fact specific analysis and "moves along a 'sliding scale,' depending on the circumstances of each case." *Steward Int'l Enhanced Index Fund v. Carr*, 2010 WL 336276, at *6 (D.N.J. Jan. 22, 2010). In conducting that analysis, courts consider "where the parties are from, where the evidence is

concentrated, and where the relevant conduct occurred." *Id.* For example, in *Windt*, the Third Circuit affirmed the district court's decision to accord plaintiffs' choice of forum "a low degree of deference," even though two individual defendants were New Jersey residents, because (i) there was "little evidence of convenience to Plaintiffs," who had "no connections to New Jersey," (ii) New Jersey was "not the home forum of the corporate defendant," (iii) there was "no indication that evidence [was] concentrated in New Jersey," and (iv) no evidence "indicat[ed] that a substantial amount of conduct giving rise to the instant dispute occurred in New Jersey." 529 F.3d at 190-91.

These same factors weigh against affording deference to Plaintiff's choice of forum. Plaintiff is a resident of Michigan (Compl., Ex. B at 1), not New Jersey. He has not alleged that he has any other connection to New Jersey. *See Steward*, 2010 WL 336276, at *7 ("[T]his Court finds the Plaintiffs' lack of connection to New Jersey significant in determining how much deference to give their choice of forum."). Even if Plaintiff had brought this action in his home forum of Michigan, in light of his status as a derivative (and therefore nominal) plaintiff, his choice of forum would merit little or no deference. *See In re BP S'holder Derivative Litig.*, 2011 WL 4345209, at *4 (S.D. Tex. Sept. 15, 2011) ("[I]n shareholder derivative cases where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, courts have declined to accord the plaintiff's forum choice increased weight.") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524-25 (1947)), *aff'd*, *City of New Orleans Emps. Ret. Sys. v. Hayward*, 508 F. App'x 293 (5th Cir. 2013); *see also Holzman v. Guoqiang Xin*, 2015 WL 5544357, at *6-7 (S.D.N.Y. Sept. 18, 2015) (Ohio resident's decision to bring derivative lawsuit on behalf of Cayman company in New York was "entitled to relatively little deference").

Nor does the Complaint allege that a New Jersey forum is convenient for the defendants, that the evidence is concentrated in New Jersey, or that the relevant conduct occurred in New

Jersey. Indeed, *only three* of the Complaint's 364 paragraphs even mention New Jersey. Those paragraphs plead that one individual defendant (out of twenty-two) currently lives in New Jersey, ¶¶ 35, 44, that Perrigo "had manufacturing facilities in Michigan, New Jersey, and other American locations," ¶ 92, and that Perrigo "maintains substantial business operations in New Jersey, including manufacturing and corporate offices in Piscataway and Parsippany, New Jersey," ¶ 44. But Plaintiff does not assert that any of the Complaint's allegations arise from manufacturing or corporate decisions made in Piscataway, Parsippany, or anywhere else in New Jersey. Indeed, Plaintiff's eleven-page Demand did not assert that any of the relevant conduct occurred in New Jersey. Demand.

Rather, the Complaint acknowledges that "Perrigo is incorporated in Ireland," pleads that Perrigo is "headquartered in Ireland and in Michigan," and spends considerable effort attempting to establish the connections between Perrigo and Michigan. ¶¶ 32-39, 44. Specifically, the Complaint alleges that "the principal wrongdoers lived and worked in Michigan and orchestrated their wrongdoing there." ¶ 32; *see also* ¶ 35 (similar). As such, Plaintiff's choice to sue in New Jersey is entitled to little or no deference.

### B.  Ireland Is an Available and Adequate Alternative Forum

There can be no doubt that Irish courts present an adequate alternative forum—indeed the exclusive forum—for this litigation involving derivative claims brought on behalf of an Irish company. Indeed, in ruling on motions to dismiss on *forum non conveniens* grounds, U.S. courts have routinely held that Irish courts are a suitable alternative forum. *See Koger, Inc. v. O'Donnell*, 2007 WL 3232586, at *3 (D.N.J. Oct. 31 2007) ("Ireland meets the requirements for an adequate alternative forum."); *Flynn v. Nat'l Asset Mgmt. Agency/Nat'l Asset Mgmt. Ltd.*, 303 F.R.D. 448, 451 (S.D.N.Y. 2014) ("The attempt to portray Ireland as lacking an adequate alternative forum is frivolous."); *Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840, 841

(11th Cir. 2011) ("Ireland is an adequate alternative forum"). The bar for adequacy is low and "[i]nadequacy of the alternative forum is rarely a barrier to dismissal based on *forum non conveniens*." *Archut v. Ross Univ. Sch. of Veterinary Med.*, 2013 WL 5913675, at *4 (D.N.J. Oct. 31, 2013), *aff'd*, 580 F. App'x 90 (3d Cir. 2014). "For an alternative forum to be considered adequate (1) the defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff with redress." *Steward*, 2010 WL 336276, at *3.

First, all of the individual defendants are or were officers or directors of Perrigo, an Irish corporation, and are being sued in that capacity. To the extent that there is any doubt about their amenability to process in Ireland, and in the event this case is dismissed on grounds of *forum non conveniens*, the individuals on whose behalf this memorandum of law is submitted or who have incorporated it by reference in their own memoranda of law will consent to process in Ireland in connection with any complaint filed by Plaintiff in Ireland raising these same claims.[11]

Second, there is not, nor could there be, any dispute that the subject matter of this lawsuit is cognizable in Ireland. Under Irish law, (i) boards of directors and officers owe fiduciary duties to the company, (ii) "if a company suffers damage as a result of any act or omission of its directors or officers, a cause of action arising from the same lies with the company," and (iii) a derivative action may be commenced by a member on the company's behalf, and Irish statutes set forth how such a claim is to be pursued. Macken Aff. ¶¶ 12-13, 17. This is not one of the "rare circumstances" where the remedy available in the other jurisdiction is "clearly unsatisfactory." *Piper*, 454 U.S. at 254 n.22, 255 ("Although the [plaintiffs] may not be able to rely on a strict liability theory, and

---

[11] As Judge Cooper held in *Archut*, "[a] party seeking dismissal need not provide record evidence that it is amenable to process in the foreign forum, because a court can always condition dismissal on the movant's consent to jurisdiction." 2013 WL 5913675, at *5.

although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly" in the foreign courts); *see also Thomson Info. Servs. Inc. v. British Telecomms., plc.*, 940 F. Supp. 20, 23 (D. Mass. 1996) ("Determining the adequacy of an alternative forum does not rest on whether that forum offers the full panoply of remedies available in the plaintiff's chosen forum. . . . Instead, the inquiry should be whether the remedies provided by an alternative forum are so clearly inadequate or unsatisfactory that it is no remedy at all."). The "possibility that [Plaintiff] may receive less favorable results" in Ireland "is not a factor to be considered" in the analysis. *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F. Supp. 1055, 1064 (D.N.J. 1994).

## C.   The Private Interest Factors Weigh in Favor of Dismissal

The Supreme Court has set forth an extensive list of private interest factors courts consider as part of the *forum non conveniens* analysis:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper*, 454 U.S. at 241 n.6. Here, the private interest factors strongly point in favor of dismissal.

***Location of Witnesses and Evidence.*** Relevant evidence in a derivative action focuses on the information available to, and the actions undertaken by, corporate management. *See In re BP*, 2011 WL 4345209, at *8. Many of the corporate decisions challenged in this derivative action were made at Board meetings held in Ireland. *E.g.*, ¶ 153 (citing Mr. Papa's statement that "[w]e're just back from the Board meeting in Ireland"). The witnesses and evidence not located in Ireland may be located in Belgium, where many of Perrigo's European operations occur, ¶¶ 45, 210, or may be located in Michigan, where the Complaint alleges "the principal wrongdoers lived and worked" and "orchestrated their wrongdoing." ¶ 32; *see also* ¶ 35 (similar).

Further, a significant portion of Plaintiff's claims relates to a $1.9 billion tax assessment issued by Irish Revenue. ¶¶ 26, 46, 315-32. Those allegations relate to events that occurred in Ireland (including meetings with Irish government officials), and related witnesses and documentary evidence will be located primarily in Ireland. For example, Plaintiff cites an "in-person 'initial audit meeting' on January 29, 2018," during which Irish Revenue and Perrigo purportedly "went over in detail what precise deductions Irish Revenue might allow." ¶ 318; *see also* ¶ 327 (citing the January 29, 2018 meeting and "several" other discussions between Perrigo and Irish Revenue). The attendees on behalf of Irish Revenue at the January 2018 meeting (and any other Irish Revenue representatives who had discussions with Perrigo) may be witnesses, and any notes or documents those individuals may have from that meeting or from those discussions (or about related issues) will presumably be relevant documentary evidence. Those witnesses and documents are almost certainly located in Ireland. Moreover, many of the expert and fact witnesses who will be called to testify in connection with the allegations about the contours of Irish tax law and its application to Perrigo will be found in Ireland.[12]

In sum, given the number of witnesses and documents that are located in Ireland, it would be more efficient and cost-effective to litigate there. Certainly there can be no reasonable dispute that "[t]he locus of the alleged culpable conduct is more closely connected to Ireland than to New Jersey." *Princeton Football Partners LLC v. Football Ass'n of Ireland*, 2012 WL 2995199, at *10 (D.N.J. July 23, 2012).

**Compulsory Process Is Not Available in New Jersey.** As discussed above, the Irish Revenue agents who met with Perrigo on January 29, 2018, may be witnesses here, as will be any other representatives of Irish Revenue who met with or communicated with Perrigo. ¶¶ 315, 318,

---

[12] Similarly, any expert testimony concerning the requirements of Rule 28.1 of the Irish Takeover Rules, ¶¶ 189, 191, will presumably be by individuals located in Ireland.

327. If this action goes forward in New Jersey, this Court would be unable to compel these Irish non-party witnesses to testify, which "heavily weighs in favor of resolving this action in an Irish forum." *Princeton*, 2012 WL 2995199, at \*8 (explaining that "[t]his Court lacks subpoena power over Defendants and other nonparty witnesses who reside in Ireland," whereas "Irish courts can . . . compel live testimony from anyone residing in Ireland."); *see also Steward*, 2010 WL 336276, at \*9 (a foreign court "would be better positioned to compel the attendance of unwilling witnesses" who reside in that country). Where, as here, "there would be significant problems with obtaining live testimony from some key witnesses [in New Jersey]," and where those witnesses would be subject to compulsory process in a foreign forum, this factor points toward dismissal in favor of that foreign forum. *Koger*, 2007 WL 3232586, at \*5.[13]

**Other Private Factors.** Insofar as Plaintiff chose a forum other than his home forum of Michigan, he will "also be burdened financially by a trial in New Jersey, as [he] does not reside in New Jersey." *Archut*, 2013 WL 5913675, at \*14 (granting *forum non conveniens* motion in favor of St. Kitts because, "[w]hile St. Kitts may not be easy or inexpensive for [plaintiff]," it would also not be easy or inexpensive for the North Carolina plaintiff to litigate in New Jersey).

## D.   The Public Interest Factors Weigh in Favor of Dismissal

The Supreme Court also has set forth an extensive list of public interest factors courts consider as part of the *forum non conveniens* analysis:

> [T]he administrative difficulties flowing from court congestion; the local interest
> in having localized controversies decided at home; the interest in having the trial of

---

[13] Moreover, several defendants have submitted motions to dismiss for lack of personal jurisdiction. To the extent that this Court lacks personal jurisdiction over particular defendants, that would constitute another reason that this action should be dismissed pursuant to the *forum non conveniens* doctrine. *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1314 (S.D. Fla. 2010) ("[T]he Court's ability to exercise personal jurisdiction over all Defendants is an important private convenience factor in the *forum non conveniens* analysis."), *aff'd*, 439 F. App'x 840 (11th Cir. 2011); *see also Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 163 (3d Cir. 2010).

a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6.

**This Case Requires the Application of Irish Law.** No party contends that the law of New Jersey governs this dispute. Rather, Perrigo has shown that Irish law must apply here. *Supra* Sec. I.A. Even *Plaintiff's own demand letter* concedes that, in light of the application of foreign law, New Jersey is not the right forum for this action. *See* Demand at 7 (arguing that in light of his position that Michigan law governs, he "believe[s] legal claims should be brought in Michigan").

Courts routinely recognize that the prospect of applying unfamiliar foreign law weighs in favor of dismissal on *forum non conveniens* grounds. *See*, *e.g.*, *Archut*, 2013 WL 5913675, at *11 ("The uncertainty regarding the application of St. Kitts law is itself a factor that weighs in favor of dismissal."); *Miller v. Boston Sci. Corp.*, 380 F. Supp. 2d 443, 456 (D.N.J. 2005) (same; Israeli law); *see also Path to Riches, LLC v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 294 (D. Del. 2018) (citing "complex choice-of-law analyses that would be unavoidable in this case" in support of dismissal on *forum non conveniens* grounds).

Here, "[i]f this case proceeded on its present trajectory[,] valuable judicial resources would be consumed deciding choice of law questions." *Banco Santander*, 732 F. Supp. 2d at 1340 (dismissing action on *forum non conveniens* grounds where defendants argued that "Bahamian law governs because under the 'internal affairs doctrine' the law of the state of incorporation governs the threshold question of whether the Plaintiffs' claims are derivative," whereas plaintiffs argued that New York common law governed). As such, "[t]he public interest factors point towards dismissal" because "the court would be required to untangle problems in conflict of laws, and in law foreign to itself." *Piper*, 454 U.S. at 251.

18

***Ireland Has an Interest in Having this Dispute Decided in Ireland.*** Plaintiff does not seek to recover damages on behalf of New Jersey citizens. Instead, Plaintiff seeks to redress injuries allegedly sustained by an Irish company as a result of alleged breach of duties by the company's directors and officers. Courts (including this Court) have repeatedly held that cases involving alleged violations of fiduciary duties by directors and officers are best litigated in the jurisdiction of incorporation, which has a stronger local interest in the internal governance of the company. *See Holzman*, 2015 WL 5544357, at *10 ("[T]he Cayman Islands have a significant interest in the application of Cayman Islands law to the actions of a Cayman Islands corporation."); *In re BP*, 2011 WL 4345209, at *12 ("the country of incorporation has the greatest interest" in resolving "questions surrounding the appropriate internal governance" of the company); *Steward*, 2010 WL 336276, at *9-10 (the "local interest in having this dispute resolved at home weigh[ed] heavily in favor of dismissal" where plaintiffs had alleged breaches of fiduciary duties by board members of a company incorporated in the United Kingdom); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006) (similar). Here as well, this factor weighs in favor of dismissal.

***There is No Reason to Burden the Citizens or Judicial System in New Jersey***. None of the underlying conduct in this derivative action is alleged to have occurred in New Jersey. The only connection with this forum asserted in the Complaint is that one individual defendant (out of twenty-two) lives in New Jersey and that Perrigo has manufacturing and corporate offices in New Jersey, ¶ 44, facts that have no connection whatsoever to the supposed misconduct. There is no reason to burden a jury of New Jersey citizens with evaluating the governance of an Irish corporation, under Irish (or, as Plaintiff argues, Michigan) law, with the goal of benefiting the Irish company. *See In re BP*, 2011 WL 4345209, at *14 (holding that "it would be unfair to burden the citizens of Louisiana" to proceed with a derivative lawsuit there when "the only party that stands to gain from the successful prosecution of this derivative action is BP itself, not the citizens of

19

Louisiana"); *Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, 2015 WL 4598809, at *6 (D.N.J. July 29, 2015) ("The tangential relationship between the subject matter of this action and Defendants' activities within the state of New Jersey undercuts Plaintiff's argument that New Jersey and its citizens have an interest in hearing the case.").

Further, this derivative action risks creating "[a]dministrative difficulties" by piling up litigation "in congested centers" instead of handling it "at its origin" in Ireland. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994); *see also Princeton*, 2012 WL 2995199, at *9 ("Given that the case has minimal connections to a New Jersey forum, the inconvenience imposed on the Court by litigating such a case points in favor of an Irish forum."). The mere fact that several *direct* actions brought under U.S. laws against Perrigo are pending in New Jersey does not warrant litigating a *derivative* action brought under foreign law here. For example, the court in *In re BP* granted the *forum non conveniens* motion and determined that the derivative action there "represent[ed] a substantial burden on the Court's docket" even though the court was already overseeing a multi-district litigation involving claims arising from the same underlying events. 2011 WL 4345209, at *11. The court held that "[d]espite some potential overlap in discovery, over which the Court will have only a limited supervisory role, each case would generate separate pre-trial motions and proceed with separate trials." *Id.* Indeed, the case for dismissal here is even more compelling, as many of the allegations overlap with those in cases pending in New York (the SDNY Class Action) and Pennsylvania (the Antitrust MDL Action).

For these reasons, should the action somehow survive its fatal jurisdictional flaws, the Court should dismiss this action pursuant to the *forum non conveniens* doctrine.

## III.   THE TAX-RELATED CLAIMS FAIL FOR ADDITIONAL REASONS

The tax-related claims asserted in the Complaint fail for the additional reason that a demand was never made on the Board relating to these claims. Federal Rule of Civil Procedure 23.1, which

governs the pleading requirements for shareholder derivative actions brought in federal court, mandates that a complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not obtaining the action or not making the effort."

Here, the Demand does not discuss any potential tax liabilities. The Complaint does not describe *any* effort to raise with the directors *any* potential claims related to (i) the "potentially ruinous tax liabilities" assessed by Irish Revenue and the IRS, and (ii) alleged "[m]isrepresentations regarding these tax liabilities." ¶ 26; *see also* ¶¶ 315-32. Indeed, the Demand does not so much as mention the tax-related issues. Nor does the Complaint explain why Plaintiff did not make the effort "to obtain the desired action from the directors." Certainly there are no allegations about these topics stated with the requisite particularity.

Plaintiff cannot remedy these deficiencies by amending the Complaint. Here, Irish law (which governs because Perrigo is an Irish corporation) requires in all circumstances for a shareholder to make an application to the Irish High Court (*see* Macken Aff.), which Plaintiff has failed to do (*supra* Sec. I.B.).

Moreover, even if the Court were to apply Michigan law (as Plaintiff urges, ¶ 32), Michigan also imposes a demand requirement in every circumstance. *See* Mich. Comp. Laws § 450.1493a (2019) ("A shareholder may not commence a derivative proceeding until all of the following have occurred: (a) A written demand has been made upon the corporation to take suitable action. (b) Ninety days have expired from the date the demand was made . . . ."); *see also Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 102 n.7 (1991) (noting that Michigan has "adopted a universal-demand rule"); *Va. M. Damon Tr. v. N. Country Fin. Corp.*, 325 F. Supp. 2d 817, 821 (W.D. Mich. 2004) ("Michigan has adopted a universal demand rule, mandating pre-suit demand upon the corporation

in all circumstances[.]"). As such, prior to filing a shareholder derivative action, a shareholder of

a Michigan company must always comply with the mandatory demand requirement.

Plaintiff has failed to allege (nor could he) that the Demand (or any other correspondence

with Perrigo) so much as referenced the tax-related issues or demanded that the Company take any

action in connection with those facts and circumstances. *See* Demand. The Complaint alleges that

Plaintiff made a demand concerning only four topics, none of which relate to the tax-related issues.

¶ 27. Thus, Plaintiff's claims regarding the tax-related issues should be dismissed because, even if

Michigan law were to apply, Plaintiff has failed to comply with Michigan's mandatory demand

process.

## IV.   IF THIS ACTION SOMEHOW SURVIVES, IT SHOULD BE STAYED PENDING RESOLUTION OF THE PRIOR LITIGATIONS

In the event this Court does not dismiss this action, it should stay the action pending final

resolution of the Prior Litigations. "[T]he power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket." *Landis v. North Am.*

*Co.*, 299 U.S. 248, 255 (1936). In determining whether to stay proceedings, courts consider "the

hardship to the moving party should the case proceed; the potential prejudice to the non-moving

party; whether the actions involve same or similar parties; the similarity of issues; and judicial

economy." *Lloyd v. Carney*, 2011 WL 11799981, at *1 (D.N.J. Aug. 5, 2011). A district court "has

broad discretion to stay proceedings." *Russo v. New Jersey*, 2018 WL 3601234, at *2 (D.N.J. June

22, 2018).

Here, as is often the case in connection with derivative litigation based on a substantially

similar set of facts and circumstances as those at issue in previously-filed securities class action

litigation, all of these factors support staying this action. *E.g.*, *In re STEC, Inc. Derivative Litig.*,

2012 WL 8978155, at *8 (C.D. Cal. Jan. 11, 2012) ("[M]any courts have stayed derivative actions,

finding that they were premature because the [related] securities class action had not yet been resolved."); *In re Insys Therapeutics Inc. Derivative Litig.,* 2017 WL 5953515, at *2-4 (Del. Ch. Nov. 30, 2017) (staying derivative action pending resolution of related securities class action); *Brenner v. Albrecht*, 2012 WL 252286, at *5-6 (Del. Ch. Jan. 27, 2012) (same).

***Similarity of Allegations, Issues, and Parties.*** When a derivative claim is based on "allegations, issues and parties" that "substantially overlap" with those in a previously pending securities class action, courts routinely stay the derivative action. *Rosenblum v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008).[14] Here, the overlap is obvious.

First, the Complaint and DNJ Complaint plead substantially similar allegations about the same four topics. *See* Groner Decl. Ex. 2 (chart comparing topics of allegations in the Complaint to topics of allegations in the DNJ Complaint). In light of this substantial overlap, it is unsurprising that many of the specific allegations overlap as well. For example:

- Plaintiff, like the DNJ Plaintiff, alleges that Mr. Papa misstated that "'Omega and Perrigo together were well-positioned,' to achieve a '5% to 10% growth rate,' and described the Omega acquisition as 'immediately accretive.'" ¶ 232; DNJ Compl. ¶ 253.

- Both Plaintiff and the DNJ Plaintiff allege that Ms. Brown misled investors when stating during an investor presentation, "We have met our consolidated organic-only goals in the past and fully intend to do so in the future. Looking forward, our goal is to once again deliver an organic net sales CAGR for the next years in the 5% to 10% range while off a significantly larger base." ¶ 165; DNJ Compl. ¶ 155.

- Plaintiff, like the DNJ Plaintiff, alleges Perrigo colluded to "contemporaneously" raise "prices for many generic products by 300% to 500% or more . . . . These price hikes allowed Perrigo to reap hundreds of millions of dollars in collusive revenues." ¶ 3; DNJ Compl. ¶ 6.

Second, the allegations in this action about Irish tax issues overlap with the allegations in the SDNY Class Action. For example:

---

[14] *Accord In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012); *STEC*, 2012 WL 8978155, at *6; *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007); *Breault v. Folino*, 2002 WL 31974381, at *1-2 (C.D. Cal. Mar. 15, 2002).

23

- Plaintiff and the SDNY Plaintiff each allege that Perrigo made misrepresentations and omissions about an audit that concluded in the fall of 2018 with Irish Revenue assessing Perrigo a $1.9 billion bill in back taxes. ¶¶ 26, 46; SDNY Compl. ¶¶ 9, 64.

- Plaintiff, like the SDNY Plaintiff, alleges that, as of the date of a January 29, 2018 "initial audit meeting," Irish Revenue had already determined what "precise deductions" it would allow. ¶ 318; SDNY Compl. ¶ 7.

- Plaintiff, like the SDNY Plaintiff, alleges that Perrigo attempted to downplay the magnitude of Irish Revenue's audit in its March 1, 2018 10-K, stating: "We have ongoing audits in multiple other jurisdictions the resolution of which remains uncertain…The Ireland Tax Authority is currently auditing our years ended December 31, 2012 and December 31, 2013." ¶ 317; SDNY Compl. ¶ 45.

- Plaintiff, like the SDNY Plaintiff, alleges that Perrigo's November 8, 2018 10-Q should have disclosed Irish Revenue's position (as set forth in its audit findings letter) concerning the amount of tax liability. ¶ 320; SDNY Compl. ¶ 58.

Third, the allegations here also overlap with those in the Antitrust MDL Action. Most obviously, the Complaint cites extensively (in block quotes spanning four pages) to an October 16, 2018 court opinion in the Antitrust MDL Action. ¶ 96(a)-(h). The Complaint also quotes at length from the DNJ MTD Decision (¶¶ 97, 99) and states that "misrepresentations regarding the[] tax liabilities" at issue in this action are also at issue in the SDNY Class Action (¶ 26).

In light of that substantial overlap, it is unsurprising that the defendants overlap as well. Plaintiff names as defendants here all twelve defendants in the DNJ Class Action and three of the four defendants in the SDNY Class Action. *Compare* ¶¶ 51, 56-62, 65-66, 69, *with* DNJ Compl. ¶¶ 30-42; *compare* Compl. ¶¶ 44, 63, 67, *with* SDNY Compl. ¶¶ 21, 22, 24.

Just as the claims in a derivative action of this type are dependent on the success of the previously-filed claims, so too is the relief. Indeed, the relief in follow-on derivative litigation is often not ascertainable until after the resolution of the related cases—as is the case here. For example, in *Brenner*, the court held that it was impractical for a derivative case to proceed during the pendency of a related securities class action because the damages in the derivative case were, at least in part, "contingent" on the outcome of the securities action. 2012 WL 252286, at *6. The

court explained that if the derivative plaintiff "ultimately succeeds on the merits, the full extent of damages will not be known until the [securities action] is resolved, *i.e.*, the costs to defend it and the amount of any settlement or judgment." *Id.*; *see also In re Insys*, 2017 WL 5953515, at *3.

This case should be stayed for the same reason. Plaintiff makes clear that the alleged damages are intertwined with the outcome of the Prior Litigations. Plaintiff alleges that, "as a direct and proximate result of the Individual Defendants' actions, Perrigo has expended, and will continue to expend, significant sums of money," including "costs incurred from defending, settling, or paying an adverse judgment in private securities and antitrust litigations," the cost of "any adverse judgment from any other legal actions pertaining to Perrigo's improper practices or misstatements," and other similar costs that will only be incurred following resolution of related proceedings. ¶ 334. Plaintiff further alleges that "Perrigo's business, goodwill, and reputation have been, and will continue to be, severely damaged." ¶ 335. In other words, the damages sought are speculative and indeterminate because they largely arise from potential losses to be incurred in connection with the Prior Litigations, in which no final judicial determination has been made.

Finally, it is not clear how Perrigo's reputational harm could be evaluated for purposes of assessing damages before a judgment is rendered in the Prior Litigations. *See In re Isolagen Inc., Sec. & Derivative Litig.*, 2007 WL 1101278, at *2-3 (E.D. Pa. Apr. 10, 2007) (derivative suit was premature where the "majority of the damages the Plaintiff is claiming"—such as "costs of internal investigations, including accounting fees and legal fees," "liability for securities fraud," and "damage to its goodwill"—"are contingent upon the outcome of the related securities class action which is still pending"). Accordingly, "because the derivative claims cannot be adjudicated in full (or even in large measure) until the [Prior Litigations] [are] tried[,] . . . the sensible ordering of events is for the [Prior Litigations] to proceed first." *Brenner*, 2012 WL 252286, at *6; *see also Brudno v. Wise*, 2003 WL 1874750, at *5 n.11 (Del. Ch. 2003). Indeed, if the Prior Litigations are

resolved favorably for Perrigo, there may be no breach of fiduciary duty claim against the individual defendants in connection with the alleged misconduct challenged in the Complaint.

*Hardship to the Company.* A stay is also appropriate because it would be both prejudicial and impractical for the Company to defend itself in the Prior Litigations while Plaintiff undermines that defense by simultaneously litigating derivative claims—purportedly on behalf of Perrigo—based on the same core allegations. As another court has explained in analogous circumstances:

> it is not practical for two actors . . . to pursue divergent strategies in two simultaneous actions on behalf of the same entity. That consequence renders simultaneous prosecution of both actions unduly complicated, inefficient, and unnecessary…The potential for such conflicts . . . screates a significant risk that prosecution of [the derivative] case will prejudice [the corporation].

*Brenner*, 2012 WL 252286, at *5-6; *see also In re Ormat Techs., Inc. Derivative Litig.*, 2011 WL 3841089, at *4-5 (D. Nev. Aug. 29, 2011); *In re Duke Energy Corp. Coal Ash Derivative Litig.*, 2015 WL 5135066, at *1 (Del. Ch. Aug. 31, 2015). In particular, allowing Plaintiff to proceed creates the risk that "adverse judicial rulings in this [derivative] action might estop the Company from advancing contrary assertions on its own behalf in the [Prior Litigations]." *Brenner*, 2012 WL 252286, at *6. A stay of this action "would minimize these risks." *Id.*

*Lack of Prejudice to the Non-Moving Party.* Plaintiff purports to bring this derivative action for the Company's benefit, not his own, and thus he cannot be injured by any delay in its adjudication. Compl., Prayer for Relief (seeking judgment "in Perrigo's favor" and classifying Plaintiff as "an adequate representative on Perrigo's behalf"). Indeed, "the Supreme Court [has] characterized the stockholder in a derivative action as at best a nominal plaintiff" because "it is the corporation in derivative actions who is the real party in interest." *Graphic Scanning Corp. v. Yampol*, 677 F. Supp. 256, 259 (D. Del. 1988) (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

Moreover, a stay will not harm Plaintiff. The plaintiffs in the Prior Litigations have "a strong incentive to develop evidence that will be useful to the plaintiffs in [all actions]," including

Plaintiff. *Brudno*, 2003 WL 1874750, at *5 n.11; *see also Brenner*, 2012 WL 252286, at *7 (the "same practical consideration of overlapping allegations that renders simultaneous prosecution of both cases unduly complicated, inefficient, and unnecessary also mitigates the risk of delaying discovery" in one of the cases). And "[a] stay will not significantly prolong Plaintiff's re[a]lizing relief because Plaintiff's potential relief relies in part on the outcome of the [Prior Litigations]." *STEC*, 2012 WL 8978155, at *8. As such, a stay here will not prejudice Plaintiff.

**_Judicial Economy._** "[C]onsiderations of judicial economy weigh heavily in favor of granting" a stay where the company otherwise "would potentially be forced to relitigate the same issues." *Lloyd*, 2011 WL 11799981, at *1. It would be a waste of judicial resources for the Company to be forced to concurrently litigate similar issues in this action and the Prior Litigations. "Courts that have considered the interplay between derivative and securities actions have often found that derivative claims cannot be adjudicated in full (or even in large measure) until the securities class action is tried." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1048-49 (N.D. Ill. 2012). And "[a] resolution of the class claims would significantly simplify the central issue in the derivative case, *i.e.*, the scope of the individual defendants' liability." *Id.*; *see also Rosenblum*, 2008 WL 9396534, at *8 ("[S]taying the derivative action would preserve judicial resources, since the allegations, issues and parties in the two lawsuits substantially overlap.").

Here, allowing the Prior Litigations to proceed in advance of this action will avoid the burdens and inefficiency of duplicative and potentially unnecessary litigation. Even if the outcome of the Prior Litigations does not "settle every question of fact and law" at issue here, "it will 'in all likelihood . . . settle many and simplify them all.'" *Trikona Advisors Ltd. v. Kai-Lin Chuang*, 2013 WL 1182960, at *4 (E.D.N.Y. Mar. 20, 2013) (quoting *Landis*, 299 U.S. at 256).

A stay would also prevent the diversion of Company resources away from its defense of the Prior Litigations. As another court has explained in an analogous case, "it seems sensible for

the company . . . to devote its resources at this time exclusively to the Securities Class Action. Given the lack of any pressing need for the simultaneous procession of the Shareholder Derivative Action, litigative efficiency can be advanced at no discernible cost to other interests." *Cucci*, 2007 WL 3396234, at *2; *see also STEC*, 2012 WL 8978155, at *4 (derivative action would "likely divert financial and management resources away from [the securities] action").

A stay of this action pending resolution of the Prior Litigations is warranted.

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice in its entirety pursuant to Rules 12(b)(1), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*. Alternatively, if the Court denies the motion to dismiss, the Court should stay this derivative suit pending resolution of the Prior Litigations.

Dated:  January 10, 2020                    By: */s/ Alan S. Naar*
                                            Alan S. Naar

                                            GREENBAUM, ROWE, SMITH
                                             & DAVIS LLP
                                            99 Wood Avenue South
                                            Iselin, New Jersey 08830
                                            (732) 476-2530
                                            anaar@greenbaumlaw.com

                                            FRIED, FRANK, HARRIS, SHRIVER
                                             & JACOBSON LLP
                                            James D. Wareham (*pro hac vice application to be filed*)
                                            James E. Anklam (*pro hac vice application pending*)
                                            Katherine L. St. Romain
                                            801 17th Street, NW
                                            Washington, DC 20006
                                            (202) 639-7000
                                            james.wareham@friedfrank.com
                                            james.anklam@friedfrank.com

                                            Samuel P. Groner (*pro hac vice application pending*)
                                            One New York Plaza
                                            New York, New York 10004

28

(212) 859-8000
samuel.groner@friedfrank.com

*Counsel for Nominal Defendant Perrigo Company plc and
Defendants Bradley Alford, Rolf Classon, Adriana
Karaboutis, Jeffrey Kindler, Donal O'Connor, Geoffrey
Parker, and Theodore Samuels*

Dated:  January 10, 2020          By:   */s/ Andrew T. Frankel*
                                        Andrew T. Frankel

                                  SIMPSON THACHER & BARTLETT LLP
                                  Joseph M. McLaughlin (*pro hac vice application to be
                                  filed*)
                                  Shannon K. McGovern (*pro hac vice application to be
                                  filed*)
                                  425 Lexington Avenue
                                  New York, New York 10017
                                  Telephone: (212) 455-2000
                                  Facsimile: (212) 455-2502
                                  afrankel@stblaw.com
                                  jmclaughlin@stblaw.com
                                  smcgovern@stblaw.com

                                  *Counsel for Defendant Murray S. Kessler*

Dated:  January 10, 2020          By:   */s/ Marshall R. King*
                                        Marshall R. King

                                  GIBSON, DUNN & CRUTCHER LLP
                                  Reed Brodsky (*pro hac vice application to be filed*)
                                  Aric H. Wu (*pro hac vice application to be filed*)
                                  200 Park Avenue
                                  New York, NY  10166
                                  (212) 351-4000
                                  rbrodsky@gibsondunn.com
                                  awu@gibsondunn.com
                                  mking@gibsondunn.com

                                  *Counsel for Defendant Joseph Papa*

Dated:  January 10, 2020          By:   */s/ R. Scott Thompson*
                                        R. Scott Thompson

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
SThompson@WMD-LAW.com

PETRILLO KLEIN & BOXER LLP
Guy Petrillo (*pro hac vice application pending*)
Leonid Sandlar (*pro hac vice application pending*)
655 Third Avenue, 22d Floor
New York, NY  10017
 (212) 370-0330
gpetrillo@pkbllp.com
lsandlar@pkbllp.com

*Counsel for Douglas Boothe*

30